## PEUGH *v.* PORTER & Another.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Argued December 17, 1884.—Decided January 5, 1885.

An instrument, by which A, as attorney in fact by substitution, for good consideration, assigns to B an interest in claims to be established against a foreign government in a mixed commission, is valid in equity, although made before the establishment of the claim, and creation of the fund ; and may work a distinct appropriation of the fund in B's favor, to the extent of the assignment, within the rule laid down in *Wright* v. *Ellison,* 1 Wall. 16.

This was an appeal from a decree in a suit in equity in the Supreme Court of the District of Columbia. The facts which make the case are stated in the opinion of the court.

*Mr. Jeremiah M. Wilson (Mr. Shellabarger* was with him) for appellant.

*Mr. S. V. White,* one of the appellees, in person.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Several awards were made by the Mexican Claims Commission, under the treaty between the United States and Mexico of July 4, 1868, in favor of claimants, representatives respectively of three American citizens, Parsons, Conrow and Standish, which amounted in the aggregate to $143,812.32. Of this, one-half was paid to the claimants and the other half remained with their consent under the control of the Secretary of State, to be paid to the agents and counsel of the claimants according to their respective rights and interests. Several bills in equity to determine these interests were filed in the Supreme Court of the District of Columbia, to one of which Peugh, the appellant, was made a defendant, and, appearing therein, also filed a cross-bill on his own behalf. On final hearing all the bills and cross-bills were dismissed, Peugh alone appealing. The adverse interest in the litigation is represented by White, who claims as a purchaser of the whole fund. The object of the bill of Peugh was to obtain a declaration of the fact and extent of his interest in the fund, and to enjoin the defendant White from demanding and receiving more than what should remain after satisfaction of the appellant's claim. The Secretary of State was made a party defendant, but did not appear, and no relief is asked against him. The jurisdiction of the court is invoked for the single purpose of determining the relative equities of the parties in the fund, and giving effect to them by an appropriate decree.

The history of the case, so far as material to the determination of the controversy, we gather from a volume of testimony, not without conflict, and find to be as follows :

The three claimants severally employed Richard H. Musser, of St. Louis, to prosecute their claims, and, agreeing that he should pay all expenses and receive half of the net proceeds of the claims after deducting the expenses of their prosecution, executed and delivered to him full powers of attorney, with power of substitution.

Knowledge of the existence of these claims had been first

communicated to Musser by Richard H. Porter, and the agreement between them was, that each should have an equal interest in the prosecution and proceeds of the claims in case of recovery.

Accordingly, Porter entered into an agreement with the appellant Peugh and C. E. Rittenhouse, a copy of which is as follows :

" Memorandum of agreement, made by and between Richard H. Porter, of St. Louis, Mo., and Charles E. Rittenhouse and Samuel A. Peugh, of this city of Washington, District of Columbia.

" Whereas said Richard H. Porter, acting as attorney for Richard H. Musser by authority of substitution from said Musser, who, acting in behalf as attorney in fact for Mildred Standish, widow of Austin M. Standish ; Mrs. —— Conrow, widow of Aaron H. Conrow, and —— Parsons, father of Monroe M. Parsons, and guardian of the son Monroe M. Parsons, above named, all of the State of Missouri ; and whereas said Porter is desirous of the aid of said Rittenhouse and Peugh in a certain advance of money to the said Porter, to enable him to procure the testimony to sustain the claims of these other certain named parties have against the government of Mexico for robbery and destruction of the lives of those whom they represent under the treaty made between the United States and the Republic of Mexico on the 4th day of July, 1868, and also the prosecution of said claim before a commission appointed by and between the two said Republics, and now in session in the city of Washington, D. C.; and whereas said Porter being, in his agreement with the said parties claiming against Mexico as aforesaid, entitled to one-half of any amount to which he may establish claim before said commission, he hereby agrees to, and does hereby transfer and assign, in consideration of the premises, unto the said Rittenhouse and Peugh one-half of the amount he is entitled to receive under and by virtue of his authority in the premises, the said last-named parties to be at the expense of prosecuting the said claims before the commission herein named, but the testimony to be produced to them by the said parties.

" In testimony whereof, we, and each of us, have hereunto set our hands and seals, this 16th day of February, 1870.

| " (Signed) | R. H. PORTER. | [SEAL.] |
| | S. A. PEUGH. | [SEAL.] |
| | C. A. RITTENHOUSE. | [SEAL.]" |

At the date of the execution of this paper Porter had not in fact been substituted by Musser, under his powers, in writing, but subsequently, on July 4, 1870, Musser did so by writing, indorsed on the letters of attorney given by the claimants; and Porter himself subsequently, in 1874, obtained direct powers from at least two of them.

Peugh and Rittenhouse entered upon the performance of their engagements with Porter in pursuance of the agreement of February 16, 1870, but Rittenhouse subsequently released his interest therein to Porter, by the following instrument:

" WASHINGTON, *September* 2, 1872.

" In consideration of said Porter's having paid certain expenses on the claim of Mrs. Hamilton for $35,000, now pending before the Southern Claims Commission, one-half of which he demands of me on account of my interest therein, I hereby relinquish to him, said Porter, all my right, title, and interest in and to the several claims referred to in the foregoing agreement, and release him from his obligation to repay me the sum advanced by me for my aforesaid interest in these Mexican claims.

" (Signed) C. E. RITTENHOUSE."

In the mean time Peugh and Rittenhouse had employed Charles H. Winder, as counsel, for a fixed compensation, payable out of their proportion of the awards, to present the case to the commission in argument; and, after the relinquishment by Rittenhouse of his interest in the matter, Peugh and Winder continued to co-operate in the prosecution of the claims.

Their services in that behalf were well known to Porter and to Musser, as well as the particular arrangements under which they were rendered. Indeed, the latter, by a letter to Ritten-

house, dated February 18, 1871, expressly ratified the contract made by Porter with Peugh and. Rittenhouse. Mr. Winder, the record abundantly shows, under his employment by Peugh, and a distinct agreement directly with Porter, made afterwards, rendered constant and evidently very valuable and efficient services in the prosecution of the claims until the awards were finally made. And, in respect to the services rendered by Peugh, which were also continuous during the entire proceeding, Mr. Winder, whose statements seem to be entitled to full credit, testifies as follows:

"With regard to the statement contained in the 8th paragraph of Mr. Peugh's amended cross-bill in cause of *McManus* v. *White et al.*, No. 6,382, I would say that I have no knowledge of the amount of money Mr. Peugh may have spent in the matter; but, as attorney in fact and agent, he was industrious and persistent in his efforts to procure testimony and to forward the proceedings before the commission. I think he was especially diligent in getting the parties in Missouri to furnish the necessary pleadings in the case—I mean memorials— and also the testimony upon which the cases were adjudicated. My belief at the time was that it was in a great measure due to his efforts that the testimony was received in time to meet the requirements of the commission in relation to the closing of the cases on the 1st of April, 1872. I don't know of any duties strictly as counsel that were performed by him."

On the whole, we think it is satisfactorily shown that Peugh's services were as valuable and meritorious in the successful prosecution of these claims, as those of any other person engaged in it; and that they were rendered in pursuance of his agreement with Porter, confirmed by Musser and assented to by all parties in interest.

The claim of White is founded upon a purchase made by him from Musser and Porter, and from others claiming under the former, whose rights arose subsequent in time to the contract between Porter and Peugh and Rittenhouse, and White's purchase being made after Peugh's services had been fully rendered.

Apart from the merits, objection is made to a decree in favor

of Peugh, on the ground that he has no equitable lien on the fund in controversy, within the decisions in *Wright* v. *Ellison*, 1 Wall. 16, and *Trist* v. *Child*, 21 Wall. 441, 447. The rule, as declared in the first of these cases, is, that "it is indispensable to a lien thus created that there should be a distinct appropriation of the fund by the debtor, and an agreement that the creditor should be paid out of it." 1 Wall. 22.

Here, as between Musser and Porter on the one hand, and Peugh on the other, there were words in the agreement, of express transfer and assignment of the very fund now in dispute, though not then in existence, which, in contemplation of equity, is not material. And if that was not the case in the powers of attorney given by the claimants to Musser and Porter, it is not pertinent to this controversy; for the principals have voluntarily permitted the one-half of the fund to remain unclaimed by them, in order that their agents and attorneys may have it apportioned among themselves according to their respective rights.

It is further objected that Peugh's rights under the contract of February 16, 1870, were lost by the release of Rittenhouse, their interest being joint. If this were so at law, it would not be so in equity, contrary to the intention of the parties; but here there was an express and distinct recognition of the several interest of Peugh in the contract, and of his right to proceed in its performance, after the release of his co-contractor. His services were rendered and were accepted, and he is entitled to his compensation in accordance with his agreement. There should have been a decree in his favor on his cross-bill for the one-fourth of the fund, subject to the claim of the estate of Winder, who is deceased, for the amount of his compensation under his agreement with Peugh and Rittenhouse.

*The decree of the Supreme Court of the District of Columbia is accordingly reversed, and the cause remanded, with directions to render a decree in conformity with this opinion.*