CURRAN et al. v. CAMPION et al. [1]

(Circuit Court of Appeals, Eighth Circuit. February 14, 1898.)

No. 871.

1. EQUITY PLEADING—CONTRADICTORY ALLEGATIONS.

When the positive allegations of misrepresentation and concealment contained in a bill are sufficient, if standing alone, to entitle complainants to the relief sought, their effect will not be destroyed by other allegations, in a part of the bill seeking to excuse complainant's delay, that all the information which complainants had been able to obtain, other than the representations made to them to induce the execution of their deed, was derived from general rumors, and that they were unable to obtain the exact facts.

2. SAME—MULTIFARIOUSNESS.

No bill is multifarious which presents a common point of litigation, the decision of which will affect the whole subject-matter, and settle the rights of all the parties; and it is not indispensable that all the parties should have an interest in all the matters contained in the suit, but it is sufficient if each party has an interest in some material matters involved, which are connected with the others.

Appeal from the Circuit Court of the United States for the District of Colorado.

[a] Rehearing pending.

This was a suit in equity by Michael Curran, Bridget Curran, Mary Walsh, Sarah Horan, Katie Curran, Margaret Curran, and Bridget Folley against John F. Campion, A. V. Hunter, and the Ibex Mining Company, to cancel a deed to an interest in a mine, and to recover the same and its products. The complainants have appealed from a decree sustaining demurrers to the bill, and dismissing the suit.

E. B. Green and Amos Green, for appellants.

Charles J. Hughes, Jr., and Charles Cavender, for appellees.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge. This suit involves a one-sixth interest in the same mine and products in question in the case of Kelley v. Boettcher, 85 Fed. 55. It is here upon an appeal from a decree sustaining demurrers to the amended bill, and dismissing the suit. The questions it presents are very similar to those raised by the demurrer in Kelley v. Boettcher, and the two cases were argued and submitted at the same time. The purpose of the suit was to obtain the cancellation of a deed of $^{11}/_{72}$ of the mine, and to recover $^1/_6$ of the mine and of its products. The original bill was filed on September 16, 1895. On November 5, 1895, a demurrer to this bill was sustained, and leave was given to the appellants to amend. The bill was amended; the appellees interposed demurrers to the amended bill; and on July 7, 1896, the decree sustaining the demurrers and dismissing the suit, which is challenged by this appeal, was rendered. The amended bill discloses these facts: Prior to August 19, 1890, John Curran was the owner of the undivided one-sixth of the Little Johnny lode mining claim, which is situated near Leadville, in the state of Colorado. On that day he died, intestate, and his interest in this mine descended to his father, Michael Curran, who died, intestate, on April 19, 1891; and this interest descended to the appellants, so that the appellant Bridget Curran owned one-half, and each of the appellants Michael Curran, the son of the deceased Michael, and Margaret Curran, Katie Curran, Sarah Horan, Mary Walsh, and Bridget Folley, his daughters, owned one-twelfth, of that interest. In the summer of the year 1893, all of the appellants except Michael Curran gave to Thomas J. Horan a power of attorney to sell and convey their interest in this mine. Horan lived at Grand Island, in the state of Nebraska, and none of the appellants lived nearer the mine than the state of Wisconsin. None of them knew anything about the history, condition, or value of the mine, or anything about the business of mining for gold and silver, and Horan was equally ignorant. The appellees A. V. Hunter and John F. Campion had been profitably working this mine for several years prior to March 5, 1891, when they organized the appellee the Ibex Mining Company, a corporation, the majority of the stock of which they have always held, and conveyed their interests to it. Since that time they have operated the mine in the name of this corporation. In 1893 these appellees conspired together to obtain from all the appellants except Michael Curran a conveyance of their interest in this mine, by false

representations and concealments. For this purpose they employed suitable agents to induce Horan, their attorney in fact, to make this conveyance, and represented to him that they were working other mines through a shaft which they had on the Little Johnny lode mining claim, but that the Little Johnny was not doing anything at all, and that it had become entirely worthless because of the fall in the price of silver. Horan was persuaded by these representations that the mine was of little value, and was induced to convey the interest of all the appellants except that of Michael Curran to the appellee Hunter for $3,500, and Hunter conveyed this interest to the mining company. This deed to Hunter was made on September 7, 1893. On September 20, 1893, in answer to a suggestion of Horan that he had heard that the mine was producing ore, one of the agents of the appellees wrote to him that there had been no ore taken out of this mine for more than four months; that there had been considerable prospecting work, in the hope of finding some ore, but without success; and that everything indicated that the mine had been entirely worked out to the present depth. The facts were, however, that, at and before the time the deed was made, the Little Johnny was a valuable gold mine, and the ores raised from it were worth thousands of dollars per ton for their gold, and were of little value for their silver; that it had developed into a valuable mine in 1883; that the appellees Campion and Hunter had derived several millions of dollars from it prior to March 5, 1891; that it had produced before, and was producing when the deed was obtained, ore of the value of $300,000 to $500,000 monthly above the expenses of operating it; and that it was worth $10,000,000 at that time. The appellants first discovered these facts about two weeks before they filed their original bill. The appellees, during their operation of the mine, concealed the amount and value of its products, mixed them with the ore from other mines, and purchased other mining claims with their proceeds. The appellants prayed for a cancellation of the deed of September 7, 1893, for an accounting and a recovery of the proceeds of the products of the one-sixth of the mine, for a discovery, an injunction, and a receiver. The grounds of the demurrers to this bill were (1) that the amended bill did not clearly state facts sufficient to entitle the appellants to relief; (2) that it disclosed the fact that the appellants had been guilty of laches; (3) that Michael Curran, who did not join in the deed to Hunter, was improperly joined as a complainant in this suit; (4) that the cause of action against Campion and Hunter for an accounting of the products of the mine prior to March 5, 1891, was improperly joined with the causes of action for the cancellation of the deed and an accounting of the products secured by the Ibex Mining Company after that date; and (5) that the appellants were not entitled to a discovery. The issues presented by these demurrers are so similar to those considered at length in the opinion in Kelley v. Boettcher that an extended discussion of them in this case would be idle. We shall content ourselves with briefly stating our conclusions.

The positive allegations of misrepresentation and concealment which are found in this bill are sufficient, if standing alone, to entitle appellants to a cancellation of the deed, a discovery, and an accounting. These allegations are supported by an averment that the appellants

were first informed about two weeks before the suit was commenced that at the time the deed of September 7, 1893, was made, the mine was of great value, and had produced large sums of money above the expenses of developing and operating it. · It is true that there is an allegation in the bill that all the information the solicitor for the appellants could obtain in regard to the mine and its operation was derived from the general rumors in and about the city of Leadville to the effect that the Little Johnny had developed into a very rich and extensive gold mine, and another, that he was unable to obtain any exact facts as to the net products and the dates when they were obtained. But these and other similar allegations are contained in that part of the amended bill in which the appellants are attempting to excuse laches, and to lay the foundation for a discovery, and they are accompanied with averments that the appellees have carefully and persistently concealed these facts from the solicitor of the appellants, and from all others who were not in their employment. In our opinion, they are insufficient, in view of all the allegations of the bill, to overcome its positive averments of misrepresentation and fraud.

The answer to the plea of laches is that the suit was brought within the time prescribed by the statute of limitations of the state of Colorado for the commencement of actions at law of this character, and the bill discloses no such extraordinary circumstances as demand the application of that doctrine to this suit in any briefer period.

The objection that there was a misjoinder of causes of action, in that the appellant Michael Curran has no interest in the cancellation of the deed, and that the appellees Campion and Hunter are liable to account for the products of the mine before, and not after, March 5, 1891, while the mining company is liable to account for those products subsequent to that date, is met by the proposition that no bill is multifarious which presents a common point of litigation, the decision of which will affect the whole subject-matter, and will settle the rights of all the parties to the suit, and that it is not indispensable that all the parties should have an interest in all the matters contained in the suit, but it is sufficient if each party has an interest in some material matters involved in the suit, and they are connected with the others. Hayden v. Thompson, 36 U. S. App. 361, 17 C. C. A. 592, and 71 Fed. 60; Brown v. Deposit Co., 128 U. S. 403, 412, 9 Sup. Ct. 127; Kelley v. Boettcher, 85 Fed. 55. The title of the appellants to the one-sixth interest in the mine before the deed was made is a common point of litigation, which will determine the rights of all the parties if decided against the appellants. · The right to the products of the one-sixth of the mine from 1883 to the present time is a material subject of the litigation in this case, in which all the parties are interested, and which is connected with the title to the mine, and with every other material matter in the suit.

The conclusion that the bill is sufficient to warrant relief entitles the appellants to a discovery of the facts within the knowledge of the appellees, which will aid them to establish their title and to maintain their suit. The reasons and authorities for the conclusions we have so briefly announced in this case will be found in that portion of the opinion of this court in Kelley v. Boettcher, 85 Fed. 55, which relates

to the questions presented by the demurrer in that case; and, upon its authority, the decree below is reversed, and this cause is remanded to the court below, with directions to permit the appellees to answer the amended bill.