ROGERS et al. v. PENOBSCOT MINING CO. et al.

(Circuit Court of Appeals, Eighth Circuit.　June 27, 1907.)

No. 2,421.

1. SPECIFIC PERFORMANCE—EXECUTION OF TRUST—EQUITABLE OWNERSHIP OF STOCK—SUFFICIENCY OF FACTS.

The bill set forth these facts: B. and M. agreed that B. should procure options to purchase certain mining claims in M.'s name; that they should organize a corporation with 500,000 shares of stock; that this stock should be issued to M., who should place 300,000 shares of it in the treasury of the corporation, transfer 50,000 shares to B., convey the options to the corporation, and furnish the money, either by loans to the corporation or by ᶤpurchase of the capital stock, to pay the unpaid balances of the purchase prices of the mining claims. B. procured the options. The corporation, the P. Co., was organized. M. conveyed the options to it, took the 500,000 shares of stock, and placed 300,000 shares in the treasury. The P. Co. paid the unpaid balances of the purchase prices of the mining claims, and M. took the deeds thereof to himself. The complainants were the assigns of 11,300 of the 50,000 shares of stock M. agreed to transfer to B., and they brought suit in equity against M. and the P. Co. to compel him to convey the mining claims to the corporation.

Held: (1) The bill stated a good cause of action in equity to enforce specific performance of a contract relating to real estate and to compel the execution of the trust created by the agreement and by the complete performance of it on the part of B.

(2) The facts stated in the bill constituted the complainants the equitable owners of the 11,300 shares of stock assigned to them.

(3) Equity rule 94 and the other rules applicable to stockholders' suits do not control this suit, because complainants' cause of action existed independently of, and antedated, their rights as stockholders.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, § 102.]

2. APPEAL—JURISDICTION—ASSIGNMENT OF ERRORS REQUISITE TO OBJECTIONS FOUNDED IN PROCEDURE—TOTAL ABSENCE OF POWER NOTICED WITHOUT.

A defect of jurisdiction of the trial court, such as want of diversity of citizenship, which cannot be waived, and which discloses the total absence of power in that court to take any affirmative action in the suit, will be noticed by the appellate court sua sponte, without exception or specification of error.

But objections to the jurisdiction of the trial court, such as lack of proper service of a lawful summons, which condition the method of the exercise of the power of the court and which may be waived, must be presented to the appellate court by a proper assignment of errors, which gives the opposing party an opportunity to prepare a proper record for their consideration.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 2971.]

3. SAME—CROSS-ERRORS NOT ASSIGNABLE.

Cross-errors are not assignable in a federal court.

Parties who have secured all the relief they seek cannot appeal or sue out a writ of error, nor can they, by assigning or arguing cross-errors, confer jurisdiction on a national appellate court to consider or determine alleged erroneous rulings not otherwise presented. Guarantee Co. v. Phenix Ins. Co., 29 C. C. A. 376, 379, 124 Fed. 170, 173.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Appeal and Error, § 947.]

4. REMOVAL OF CAUSES—JURISDICTION—INDISPENSABLE PARTIES ONLY CONSIDERED.

In a determination of the jurisdiction of the national courts and the right to remove causes of action to them, indispensable parties only should

be considered, because all others may be dismissed or disregarded if their presence will oust or restrict the jurisdiction or the right.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Removal of Causes, § 71.]

5. PARTIES—INDISPENSABLE—PROPER.

An indispensable party is one who has such an interest in the subject-matter of the controversy that a final decree between the parties before the court cannot be made without injuriously affecting his interests or leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience.

Every other party who has any interest in the controversy or the subject-matter which is separable from the interest of the parties before the court, so that it will not necessarily be directly and injuriously affected by a decree which does complete justice between them, is a proper party.

If a proper party is incapable of being made a party to the suit because beyond the jurisdiction, or if his joinder would oust the jurisdiction of the court as to the other parties before it, the suit may proceed without him, and the decree will not affect his interests.

The P. Co. is a proper, but not an indispensable, party to the suit, because a decree which will do complete justice between the other parties to the controversy may be rendered without injuriously affecting its interests.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Parties, §§ 41, 53.]

6. ACTION—SPLITTING CAUSE OF ACTION—ASSIGNEE OF PART MAY MAINTAIN SUIT IN EQUITY.

An assignee of a part of a credit or of a chose in action cannot, without the consent of the obligor, maintain an action at law upon it.

But such a part owner may maintain a suit in equity upon his claim, upon condition that he makes the owners of the other portions of the claim parties to the suit.

And the assignee of a part of the interest of a cestui que trust in real or personal property without the consent of the assignor may maintain such a suit to enforce the execution of the trust.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Action, § 551.]

7. EQUITY—DISMISSAL—FAILURE TO MAKE OTHER PART OWNERS PARTIES AMENDABLE—IT WILL NOT SUSTAIN DISMISSAL ON MERITS.

The failure to make other part owners of the chose in action parties to such a suit is a curable defect, and it will not sustain a judgment of dismissal of the bill on the merits. The bill should be retained until the complainants have reasonable opportunity to amend it and to bring in such part owners, or to show in their amended bill an excuse for their absence, under the practice in equity in the federal courts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, § 759.]

8. PARTIES—SUCH PART OWNERS NECESSARY, BUT NOT INDISPENSABLE, PARTIES.

Under the old chancery rule such part owners would be necessary parties to the suit, and they should be joined, if practicable.

But under the modification of that rule which prevails in the federal courts they are not indispensable parties, and if they are beyond the jurisdiction of the court, or if their presence would oust its jurisdiction over other parties before it, the suit may proceed without them, because a decree which does complete justice between the parties before the court may be rendered without directly and injuriously affecting their interests.

9. CONTRACTS—PLEADING—AVERMENT OF IS OF WRITTEN CONTRACT, IF WRITING REQUISITE.

Where a writing is indispensable to a valid contract, a pleading of a contract which does not affirmatively disclose that it was made by parol is a pleading of a written agreement.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Frauds, Statute of, § 353.]

10. TRUSTS—VENDORS TRUSTEES FOR VENDEES.

In equity, vendors of real estate and those claiming under them hold their titles in trust for their vendees.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, § 123.]

11. EQUITY—ADEQUATE REMEDY—ACTION AT LAW IS NOT FOR BREACH OF CONTRACT TO CONVEY LAND.

An action at law does not afford an adequate remedy for the breach of a contract to convey real estate or for a failure to execute a trust with which it is charged.

12. SAME—MULTIFARIOUSNESS—JOINDER OF TWO CAUSES FOR SAME RELIEF IS NOT—NO MULTIFARIOUSNESS WHERE SINGLE COMMON POINT OF LITIGATION.

A joinder of two causes of action against the same party for the same relief, one against him as an individual and one against him as an officer, does not make a bill multifarious.

No bill is multifarious which presents a common point of litigation, the decision of which will affect the entire subject-matter and settle the rights of the parties to the suit.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, § 342.]

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of South Dakota.

These are appeals from two decrees in the same suit, one of which sustained the separate demurrer of the Penobscot Mining Company to the bill of the complainants and dismissed it, and the other of which sustained the separate demurrer of Alexander Maitland to the same bill and dismissed it. The suit was brought by Rogers, Rosenthal, Thomas, and Maloney against Maitland and the Penobscot Mining Company, to compel Maitland to convey certain mining claims to the Penobscot Company, a corporation of South Dakota, to secure a decree that he had no right, title, or interest in these claims, to enjoin him from disposing of or incumbering them, and for general relief. The facts stated in the bill upon which the complainants based their prayer were these: In the spring of 1902 F. R. Byrns and the defendant Maitland made an agreement that Byrns should procure options to purchase three groups of mining claims situated in South Dakota in the name of Maitland; that they would organize a corporation with a capital stock of 500,000 shares, of the par value of $1 per share; that this stock should be issued to Maitland; that he should convey to the corporation all the options, should return 300,000 shares of stock to the treasury of the company, should convey to Byrns 50,000 shares, and should furnish the money to pay the unpaid balances upon the options and to further develop the properties, either by loans which he should make to the corporation or by the purchase of its treasury stock. Byrns obtained the options in Maitland's name and thus completely performed his part of the agreement. Maitland and Byrns organized the defendant, the Penobscot Mining Company. In accordance with their agreement, Maitland conveyed the options to it, the 500,000 shares of stock were issued to him, and he placed 300,000 shares of it in the treasury of the corporation. The unpaid balances owing upon the options were thereupon paid by the Penobscot Company for its own use and benefit; but the deeds of the mining claims were taken from the former owners to Maitland, and not to the company. In February, 1903, Byrns had assigned 1,000 of the 50,000 shares of the stock of the company to which he was entitled to one Adams, and thereupon, in pursuance of the former contract between him and Maitland, he and Maitland made a second agreement to the effect that the latter would transfer to Byrns 49,000 shares of the stock, less one-half of the shares which should ultimately be found to be due, to one Bradburn. The number of the shares due to Bradburn was determined to be 13,000 before the commencement of this suit, so that the number due to Byrns became 42,500. In April, 1903, Byrns sold and assigned this stock and all his rights under his contract to the United States Mines Company. Subsequently this company transferred to the complainant Rogers 2,500 shares,

to the complainant Maloney 1,800 shares, and to the complainant Rosenthal 7,000 shares of the capital stock of the Penobscot Company out of the shares coming to the United States Mines Company from Maitland under Byrns' assignment, and Rosenthal assigned one-half of his 7,000 shares to the complainant Thomas. Maitland holds a majority of the stock and is the treasurer of the Penobscot Company, and he controls its board of directors. He has refused to convey the mining claims to the Penobscot Company, and has refused to assign or deliver to the complainants the shares of stock to which they are entitled. The complainants have demanded of the Penobscot Company that it bring suit to compel a conveyance by Maitland of the mining claims to itself, and have demanded of Maitland and the Penobscot Company that they issue and deliver to them the shares of the capital stock of the company which have been assigned to them, and the defendants have refused to do so. Upon this state of facts the court below sustained the demurrer of the defendants to the bill, upon the ground that the bill failed to show that the complainants were either the legal or equitable owners of stock of the Penobscot Company.

Chambers Kellar, Eben W. Martin, and Norman T. Mason, for appellants.

William L. McLaughlin, Robert N. Ogden, and Adoniram J. Plowman, for appellees.

Before SANBORN and HOOK, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The demurrers of the defendants were separate. They were sustained on the merits and on the same ground—that the complainants did not show themselves to be either legal or equitable owners of stock of the Penobscot Company. The assignments of error specify this ruling alone. But counsel for the appellants contend that the court below was without jurisdiction of this case because the complainants were citizens, and the Penobscot Company was a corporation, of the state of South Dakota, and counsel for the appellees insist that the court was without jurisdiction because the defendants were not lawfully served with a legal summons. The first question is fundamental. It cannot be waived. It conditions the power of the court below to take any action in the case, except to remand the case to the state court from which it was removed, and an appellate court is not at liberty to disregard it, although the ruling upon it is not specified as error.

The second objection assails the method of the exercise of the power of the court. It relates to procedure only. It may be waived by appearance, by trial upon the merits, by failure to object at the proper time, and hence it should not be and may not be considered until an assignment of errors has been made which presents it and an opportunity has been afforded both parties to prepare a record for its consideration by an appellate court. The appellees, who have secured by the decree below all the relief which they seek, cannot now appeal, nor can they confer jurisdiction upon an appellate court to hear, to consider, or to decide questions suggested by an assignment or by an argument of cross-errors. Guarantee Co. v. Phenix Ins. Co., 59 C. C. A. 376, 379, 124 Fed. 170, 173. They must await their defeat. If that never comes, they will never suffer from the errors which they seek to suggest. If a decree is ultimately rendered against them, they

154 F.—39

will have an opportunity to secure a review of the rulings they challenge. They cannot be now considered. We turn to the first question.

Did the fact that the Penobscot Company was a corporation of the state of the citizenship of the complainants oust the jurisdiction of the Circuit Court? In a determination of the jurisdiction of the national courts and the right to remove causes of action to them, indispensable parties only should be considered, because all others may be dismissed or disregarded, if their presence would oust or restrict the jurisdiction or the right. Boatmen's Bank v. Fritzlen, 135 Fed. 650, 658, 68 C. C. A. 288, 296; Geer v. Mathieson Alkali Works, 190 U. S. 428, 432, 23 Sup. Ct. 807, 47 L. Ed. 1122; Bacon v. Rives, 106 U. S. 99, 104, 1 Sup. Ct. 3, 27 L. Ed. 69; Wormley v. Wormley, 8 Wheat. (U. S.) 421, 451, 5 L. Ed. 651; Wood v. Davis, 18 How. (U. S.) 467, 475, 15 L. Ed. 460; Sioux City Terminal R. & W. Co. v. Trust Co. of N. A., 82 Fed. 124, 126, 27 C. C. A. 73, 75; Cella, Adler & Tilles v. Brown (C. C.) 136 Fed. 439, 442; Cella v. Brown, 75 C. C. A. 608, 620, 144 Fed. 742, 754. An indispensable party is one who has such an interest in the subject-matter of the controversy that a final decree cannot be rendered between the other parties to the suit without radically and injuriously affecting his interest, or without leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience. Every other party who has any interest in the controversy or subject-matter which is separable from the interest of the other parties before the court, so that it will not necessarily be directly and injuriously affected by a decree which does complete justice between them, is a proper party to a suit. But he is not an indispensable party, and if his presence would oust the jurisdiction of the court the suit may proceed without him. Sioux City Terminal R. & W. Co. v. Trust Co. of N. A., 27 C. C. A. 73, 75, 82 Fed. 124, 126.

The foundation of this suit was the agreement of 1902 between Maitland and Byrns and the latter's performance of it. Byrns contracted to obtain the options to purchase the real estate in Maitland's name, and in consideration thereof Maitland agreed that he would put the title to the mining claims in the Penobscot Company, and that he would retain three-fourths and convey to Byrns one-fourth of the 200,000 shares of stock of the corporation which were to be issued for the options. It is true that Maitland's alleged agreement was not in terms to vest the title to the mining claims in the corporation, but to convey to it the options upon them. But it was so in legal effect, because he agreed to vest the title to the options in the company and either by loans or by the purchase of the treasury stock to furnish the money to pay the unpaid balances of the purchase prices of the claims. In the face of this agreement, with the title to the options in the company, he could not hold the title to the claims against the company, or against any party or privy to the agreement of 1902. As soon as the company paid the unpaid balances on the options, the vendors and Maitland, who took his deed from them, held the title to these claims in trust for the company and for the parties to the original agreement. Vendors of real estate and those claiming under them hold their titles in trust for their vendees. Bispham's Principles of Equity, § 364. The legal effect, there-

fore, of Maitland's contract of 1902 was that he would vest the title to the mining claims in the Penobscot Company and the title to 50,000 shares of its stock in Byrns, so that Maitland should hold the 150,000 shares and Byrns 50,000, subject to any liability of the company for loans, or to any sales of treasury stock to Maitland to raise the money to pay the unpaid balances of the purchase prices under the options. Byrns completely performed his contract. He secured the options. Thereupon the contract became executed on his part and executory on Maitland's part. Thereafter Maitland held the options, the titles which followed them, and the 200,000 shares of stock he obtained by virtue of the contract, in trust to convey the titles to the company and to transfer the 50,000 shares to Byrns or his assigns, and a perfect cause of action in equity had accrued to Byrns to enforce the specific performance of the contract and the execution of the trust created under it. Howe v. Howe & Owen B. B. Co. (C. C. A.) 154 Fed. 820, decided May 1, 1907. The complainants are assigns of Byrns and stand in his shoes. The relief they pray is that Maitland convey the titles to the mining claims to the company, that he be enjoined from otherwise disposing of or incumbering them, and that they have such further relief as may be equitable. The Penobscot Company was not a party to the contract whose performance this suit is brought to enforce. Its interests cannot be injuriously affected by any decree which shall finally adjudicate the controversy between the other parties to this suit, and the complainants seek no relief against it. That company was not, therefore, an indispensable party to the suit, and as the citizenship of the complainants and the defendant Maitland, the indispensable parties to it, was diverse, the court below had jurisdiction of it, and the motion to remand it to the state court was properly denied.

Did the bill set forth facts sufficient to constitute a cause of action in equity? The negative answer to this question rendered by the court below is based on its finding that the bill failed to show that the complainants were either legal or equitable owners of stock of the Penobscot Company. But this is not the ordinary suit by stockholders to protect or enforce the rights of their corporation, which its officers refuse to guard or urge, and it is not controlled by the rules which apply to such an action. The complainants' cause of action does not rest alone upon the fact that they are entitled to become stockholders of the Penobscot Company and hence to enforce its legal claims. Its foundation lies deeper. It inheres in the contract of 1902. It antedates the Penobscot Company, which is a mere creature or tool of that contract, and it would have existed if that company had never been. It accrued the moment Byrns procured and vested in Maitland the title to the options to purchase the mining claims. From that time Maitland held every right and title he acquired pursuant to that contract. He held the options, the title to the mining claims, the title to the 50,000 shares of stock, in trust for Byrns and his assigns according to the terms of that agreement. From that time Maitland was a trustee, and Byrns and his assigns were cestuis que trust, and a cause of action existed in their favor to enforce the execution of the trust and the specific performance of the contract, and the rules of law and practice applicable to such a suit and not those applicable to a stockholders' action govern this proceeding.

The fact that a cause of action subsequently accrued to the Penobscot Company and to its stockholders to compel Maitland to convey to the corporation the title to the mining claims cannot and does not destroy or impair the antecedent right of Byrns and his assigns to enforce the execution of the trust with which the property which Maitland acquired stood charged the moment Byrns' part of the contract of 1902 became executed and Maitland's part remained executory. Moreover, Maitland agreed by the contract of 1902 that he would transfer to Byrns 50,000 shares of the stock of the corporation which he had agreed to organize, and as Byrns had performed his part of this agreement he and his assigns became equitably entitled to a transfer of this stock from Maitland, and, as equity deems that done which ought to have been done, they became the equitable owners of this stock as soon as the Penobscot Company was organized and the 200,000 shares were issued to Maitland for the options which Byrns had secured.

Much is found in the briefs in this case about the contract of February, 1903, wherein Maitland in effect agreed to transfer to Byrns 42,500 shares of the stock of the Penobscot Company, and counsel argue this case as though that contract was the foundation of the rights of the complainants. But under the averments of the bill that agreement was made in pursuance of the contract of 1902 and in consideration thereof, and its only effect was to reduce the number of shares to which Byrns and his assigns were entitled from 50,000 to 42,500. If that agreement had never been made, Byrns and his assigns would have been entitled to the 50,000 shares of stock. By that agreement he consented that 6,500 of his 50,000 shares should be given to Bradburn in settlement of a lawsuit. But the right of Byrns and his assigns to the conveyance by their trustee, Maitland, of the title to the mining claims to the company, which he organized pursuant to the agreement of 1902, remained unimpaired.

The brief of counsel for the appellees bristles with arguments in support of the theory that the complainants are entitled to no relief, many of which overlook their right as cestuis que trust to enforce the execution of the trust created by the performance by Byrns of the contract of 1902, and rest on the erroneous assumption that their only rights arise out of the agreement of 1903. They say (1) that the bill contains no allegation that the contract of 1902 was in writing, and that no valid agreement for the conveyance of any interest in real estate can be made by parol, and no trust in relation to real estate can be created and declared save by a written instrument or by operation of law. But the bill contains an averment that Maitland and Byrns made the agreement of 1902 in relation to real estate which is specifically described in the bill, and it does not show that this contract was not in writing, and where a written agreement is indispensable to a valid contract a plea of a contract which does not affirmatively disclose the fact that it was made by parol is a plea of a written agreement. Barnsdall v. Waltemeyer, 142 Fed. 415, 417, 73 C. C. A. 515, 517; Wilhite v. Skelton, 78 C. C. A. 635, 149 Fed. 67, 71. And where an agreement relative to the conveyance of real estate is executed by one of the parties and executory on the part of the other, the latter holds his interest therein by operation of law, in trust for the former in ac-

cordance with the terms of the contract. Bispham's Principles of Equity, § 364; Howe v. Howe & Owen B. B. Co., supra.

They say: (2) That the contract is indefinite as to the time when the stock is to be transferred and as to the amount to be conveyed to Byrns, Traver, and Bradburn. But the time was immediately after Maitland received the 200,000 shares, and the amount was definite in the contract of 1902, and any uncertainty in the subsequent contract of 1903 became certainty before this suit was instituted. (3) That the contract of 1903 was a mere offer to sell personal property; (4) that the complainants had an adequate remedy at law; (5) that the contract was not mutual, in that Byrns, Bradburn, and Traver did not agree to accept the stock; and (6) that the contract of 1903 was an agreement to transfer stock, personal property, and is therefore incapable of specific performance. But the suit is to enforce the execution of the trust created by Byrns' performance of the agreement of 1902. While the court may undoubtedly decree in this suit that Maitland shall convey the shares of stock, because it may do complete justice between the parties, the gravamen of the bill is the specific performance of the contract of 1902 and the execution of the trust created under it. The chief subject of that contract was real estate, and the main relief sought here is Maitland's conveyance of that real estate to the Penobscot Company in execution of the trust created under that agreement. An action at law fails to afford an adequate remedy for the breach of a contract to convey real estate, or for a refusal to execute a trust with which it is charged, because it will not place the parties in the same situation in which they were before the agreement was made, and because it is not prompt, complete, and efficient. Boyce's Ex'r v. Grundy, 3 Pet. (U. S.) 215, 7 L. Ed. 655; Williams v. Neely, 134 Fed. 1, 10, 67 C. C. A. 171, 180, 69 L. R. A. 232; Castle Creek Water Co. v. City of Aspen, 76 C. C. A. 516, 518, 146 Fed. 8, 11; Willhite v. Skelton, 78 C. C. A. 635, 149 Fed. 67, 72. The contract was mutual. Byrns agreed to purchase and did obtain options for which the 200,000 shares of stock were issued to Maitland. Byrns became a cestui que trust and Maitland the trustee of one-fourth of the title to these lands, of one-fourth of the Penobscot Company, which Maitland controlled, and of one-fourth of the 200,000 shares of stock, for the benefit of Byrns and his assigns. The subsequent assignments of Byrns and his assigns conveyed separate and definite interests in this property held in trust by Maitland, $2500/50000$ to Rogers, $1800/50000$ to Maloney, $3500/50000$ to Rosenthal, and $3500/50000$ to Thomas, and thereby constituted them cestuis que trust of Maitland entitled to all the rights and remedies of their original assignor Byrns. It is said that the bill fails to comply with rule 94 in equity. But that rule is inapplicable to this case, because the rights of the complainants are not founded on their ownership or rights in the stock of the Penobscot Company alone, but in the prior agreement of 1902, which antedates that corporation, and from which that company sprang.

Counsel insist that the bill is multifarious, in that it unites a cause of action against Maitland, the individual, with one against Maitland, the officer of the corporation. But no relief is prayed against him in

his representative character, and all that is averred of him as an officer is but incidental to the statement of the cause of action against him as an individual. Moreover, this bill presents a common point of litigation, the decision of which will affect the entire subject-matter and settle the rights of all the parties to the suit, and no bill is multifarious which presents such a common point. Brown v. Deposit Co., 128 U. S. 403, 9 Sup. Ct. 127, 32 L. Ed. 468; Hayden v. Thompson, 17 C. C. A. 592, 71 Fed. 60; Kelley v. Boettcher, 29 C. C. A. 14, 85 Fed. 55; Curran v. Campion, 29 C. C. A. 26, 29, 85 Fed. 67, 70. Nor is a bill which unites a cause of action on behalf of the complainants and a cause of action on behalf of a corporation defendant, where the same facts sustain each cause and warrant the same relief. Jones v. Missouri-Edison Electric Co., 75 C. C. A. 631, 643, 646, 144 Fed. 765, 777, 780. The bill in hand is not multifarious.

Counsel argue that the separate demurrer of the Penobscot Company was properly sustained because no cause of action for the transfer by the company of the stock to the complainants is stated in the bill and no relief against it is prayed. These facts tend to sustain the position that this corporation was not an indispensable party to the suit. But every party who has an interest in the controversy or subject-matter separable from the interest of other parties to the suit, so that it will not be directly and injuriously affected by a decree which does justice between them, although not an indispensable party, is a proper party to a suit in equity, and may be lawfully joined. The Penobscot Company has such an interest, because the relief sought by the complainants is the conveyance to it of the titles to the mining claims held by Maitland. It is therefore a proper party to the suit. It is not indispensable that all the parties to a suit in equity should have an interest in all the matters contained in the litigation. It is sufficient if each party has an interest in some essential matter involved in the suit and these matters are connected with the others. Brown v. Deposit Co., 128 U. S. 403, 412, 9 Sup. Ct. 127, 32 L. Ed. 468; Jones v. Missouri-Edison Electric Co., 75 C. C. A. 631, 646, 144 Fed. 765, 780.

Another contention of counsel for the appellees is that the conveyances of Byrns and his assigns made the complainants "assignees of distinct moieties" of the rights and interests of Byrns, and that they cannot maintain a suit for the specific performance of the contract with him, because a portion of a credit or of a chose in action cannot be assigned without the assent of the debtor. It is true that an assignee of part of a credit or of a chose in action founded thereon cannot maintain, without the assent of the debtor, an action at law thereon, because a creditor may not split his cause of action and subject the debtor to the annoyance of several actions to recover a single claim. Mandeville v. Welch, 5 Wheat. (U. S.) 277, 288, 5 L. Ed. 87; Thomas v. Mining Co., 54 Cal. 578; Russell v. Ferguson, 9 Martin 647; Weinstock v. Bellwood, 75 Ky. 139; Burditt v. Porter, 21 Atl. 955, 63 Vt. 296, 25 Am. St. Rep. 763; Shankland v. City of Washington, 5 Pet. (U. S.) 389, 395, 8 L. Ed. 166; Carter v. Nichols, 5 Atl. 197, 58 Vt. 553; Crosby v. Loop, 13 Ill. 625, 628; Otis v. Adams, 27 Atl. 1092, 56 N. J. Law, 38; Milroy v. Spurr, etc., Co., 43 Mich. 231, 5 N. W. 287; Snedden v.

Harmes, 5 Colo. App. 477, 39 Pac. 68. Decisions may also be found which erroneously apply this rule to suits in equity. Burnett v. Crandall, 63 Mo. 410; Getchell v. Maney, 69 Me. 442, 444, 40 Am. Rep. 388; Johnson County v. Bryson, 27 Mo. App. 341, 349; Fourth National Bank v. Noonan, 88 Mo. 372, 377; Cook v. Bidwell (C. C.) 8 Fed. 452, 456; Appeals of City of Philadelphia, 86 Pa. 179, 182; C. & N. W. R. Co. v. Nichols, 57 Ill. 464, 466; Kansas City, M. & B. R. Co. v. Robertson, 19 South. 432, 109 Ala. 296; Insurance Co. v. Bullene, 51 Kan. 764, 774, 33 Pac. 467; Leonard v. M., K. & T. Ry. Co., 68 Mo. App. 48, 50; Bosworth v. Jacksonville Nat. Bank, 12 C. C. A. 331, 64 Fed. 615; Skobis v. Ferge, 78 N. W. 426, 429, 102 Wis. 588; Kiddoo Bros. v. Dalton, 73 Mo. App. 667.

But the settled rule of the national courts and the general and rational rule is that the assignee of a part of a credit or of a chose in action or of property in the custody of another may enforce his claim by a suit in equity, for the very reasons that he cannot do so, and hence has no adequate remedy, at law, and that he may make the assignor and all the assignees parties to the suit, so that the debtor will be subject to but a single action. Fourth Street Bank v. Yardley, 165 U. S. 634, 644, 17 Sup. Ct. 439, 41 L. Ed. 855; Trist v. Child, 21 Wall. (U. S.) 441, 447, 22 L. Ed. 623; Peugh v. Porter, 112 U. S. 737, 742, 5 Sup. Ct. 361, 28 L. Ed. 859; James v. Newton, 142 Mass. 366, 372, 378, 8 N. E. 122, 56 Am. Rep. 692; Richardson v. White, 167 Mass. 58, 60, 44 N. E. 1072; Warren v. First Nat. Bank, 38 N. E. 122, 125, 140 Ill. 9, 25 L. R. A. 746; Grain v. Aldrich, 38 Cal. 514, 521, 99 Am. Dec. 423; National Exchange Bank v. McLoon, 73 Me. 498, 40 Am. Rep. 388; Lanigan v. Bradley, etc., Co., 50 N. J. Eq. 201, 24 Atl. 505; Field v. Mayor, 2 Seld. (N. Y.) 179, 188, 57 Am. Dec. 176; Pomeroy, Eq. Jur. p. 2563, § 1280, and cases cited in the notes. And a party for whom real or personal property is held in trust may convey a part of his interest therein without the consent of his trustee, and his assignee may maintain a suit in equity to enforce the execution of the trust. The assignee of a part of the interest of a cestui que trust has the same right as had his assignor to compel the performance of the trust. Palmer v. Stevens, 15 Gray (Mass.) 243; Buck v. Swazey, 35 Me. 41, 56 Am. Dec. 681; Pomeroy, Eq. Jur. (2d Ed.) § 989; Honnett v. Williams, 66 Ark. 148, 152, 49 S. W. 495; Whipple v. Fairchild, 139 Mass. 262, 265, 30 N. E. 89; Clark v. Crego, 47 Barb. (N. Y.) 599, 614; Putnam v. Story, 132 Mass. 205, 210.

But counsel insist that there was a defect of parties to this suit, because Byrns, the assignor, and the United States Mines Company and Bradburn, assignees of parts of Byrns' interest, are not parties to the suit, and, while the complainants state in their bill that they bring this suit on behalf of themselves and all others similarly situated, they do not aver that the others are too numerous to be joined, that their joinder would oust the jurisdiction of the court, nor do they set forth any other fact which might excuse their failure to bring the other assignees of parts of the claim of Byrns into this suit. The rule in the national courts regarding the necessity of bringing in parties to suits in equity, and the reasons for it, have been thus stated by this court:

"The general rule in chancery is that all those whose presence is necessary to a determination of the entire controversy must be, and all those who have no interest in the litigation between the immediate parties, but who have an interest in the subject-matter of the litigation which may be conveniently settled therein, may be, made parties to it. The former are termed the necessary, and the latter the proper, parties to the suit. The limitation of the jurisdiction of the federal courts by the citizenship of the parties, and the inability of those courts to bring in parties beyond their jurisdiction by publication, has resulted in a modification of this rule, and a practical division of the possible parties to suits in equity in those courts into indispensable parties and proper parties. An indispensable party is one who has such an interest in the subject-matter of the controversy that a final decree between the parties before the court cannot be made without affecting his interests, or leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience. Every other party who has any interest in the controversy or the subject-matter which is separable from the interest of the parties before the court, so that it will not be immediately affected by a decree which does complete justice between them, is a proper party. Every indispensable party must be brought into court, or the suit will be dismissed. The complainant may join every proper party who would have been a necessary party under the old chancery rule, unless his joinder would oust the jurisdiction of the court as to the parties before it, or unless he is incapable of being made a party by reason of his absence from the jurisdiction of the court or otherwise. If, however, such a party is incapable of being made a party, or if his joinder would oust the jurisdiction of the court as to the parties before it, the suit may proceed without him, and the decree will not affect his interests. Rev. St. §§ 737; 738 [U. S. Comp. St. 1901, p. 587]; Equity Rule 47; Chadbourne's Ex'rs v. Coe, 2 C. C. A. 327, 51 Fed. 479, 480, 481; Shields v. Barrow, 17 How. (U. S.) 130, 139, 15 L. Ed. 158; Ribon v. Railroad Co., 16 Wall. (U. S.) 446, 450, 21 L. E. 367; Coiron v. Millaudon, 19 How. (U. S.) 113, 15 L. Ed. 575; Williams v. Bankhead, 19 Wall. (U. S.) 563, 22 L. Ed. 184; Kendig v. Dean, 97 U. S. 423, 24 L. Ed. 1061; Alexander v. Horner, 1 McCrary (U. S.) 634, Fed. Cas. No. 169; Cole Silver Min. Co. v. Virginia & Gold Hill Water Co., 1 Sawy. (U. S.) 685, Fed. Cas. No. 2,990." Sioux City Terminal R. & W. Co. v. Trust Co. of N. A., 27 C. C. A. 73, 75, 82 Fed. 124, 126; Wood v. Dummer, 3 Mason (U. S.) 308, 30 Fed. Cas. 435 (No. 17,944).

Byrns is not a necessary party to this suit because he has assigned all his interest. Perry on Trusts, § 882; Goodson v. Ellisson, 3 Russ. 583. But the United States Mines Company and Bradburn are necessary parties under the old chancery rule, because their presence is requisite to a determination of the entire controversy which has arisen under the right of Byrns. They are not, however, indispensable parties under the rule of the national courts, because a final decree can be rendered herein between the complainants and the defendants, which will completely adjudicate their rights, without binding or injuriously affecting the rights of the Mines Company and Bradburn. The Mines Company and Bradburn should therefore be brought into this suit and made parties to the bill, unless the complainants make it appear by proper averments therein either that they are absent from the jurisdiction of the court, or that their joinder would oust its jurisdiction as to the parties before it, or that the parties similarly situated with the complainants are so far unknown or so numerous that the complainants may maintain this suit under the established rules of practice in equity on behalf of themselves and all others similarly situated, without bringing the latter into the suit by name. Story's Eq. Pl. §§ 96, 113, 114a, 120, 121, 134; Hoe v. Wilson, 76 U. S. 501, 19 L. Ed. 762.

But this defect of parties will not sustain a decree of dismissal of a

bill on the merits, or upon the ground that there is no equity in it. In the case of such a defect the bill must be retained, opportunity must be given to the complainants to amend it and to bring in the necessary absent parties, or to show why it is impracticable to join them, and only upon their failure so to do after reasonable opportunity may the bill be dismissed on this account. Hoe v. Wilson, 76 U. S. 501, 504, 19 L. Ed. 762; Wood v. Dummer, 30 Fed. Cas. 438 (No. 17,944); 2 Perry on Trusts (4th Ed.) § 881.

Our conclusions are that this bill shows that this is a suit to enforce specific performance of Maitland's agreement with Byrns in 1902, and to compel the execution of the trust which was created by that agreement and by its performance on the part of Byrns; that it is not conditioned by the rules of practice which govern stockholders' suits; that the complainants, the assignors of definite parts of the rights of Byrns, are qualified to maintain the suit; that in equity they are the owners of the stock of the Penobscot Company, which appears from the bill to have been assigned to them under Byrns; and that they have a good cause of action for the relief they seek, but that their bill shows a defect of parties. The decrees below, that there was no equity in the bill and that it be dismissed upon the merits, were therefore erroneous. They must be reversed, and the case must be remanded to the court below, with directions to permit the complainants within a reasonable time to amend their bill and to bring in other proper parties, or to show by their amendment why they should not pursue this course, and to take further proceedings not inconsistent with the views expressed in this opinion. It is so ordered.