### RITCHIE v. W. G. STRANGE OIL & REFINING CO., Inc., et al.

(Circuit Court of Appeals, Fifth Circuit. ' February 15, 1922.)

No. 3710.

Corporations ⬅189(5)—Agreement by incorporators for equal division of stock held enforceable in equity.

A bill alleged that complainant and seven other individuals agreed to form a corporation for the development of oil lands, each to contribute one-eighth to its assets and to receive one-eighth of its stock; that the corporation was organized, and complainant conveyed to it certain oil leases, and offered to contribute such sum in money as was stated by the president to be required from him, which was refused; that without his knowledge the corporation issued stock to the other individuals for property at a large overvaluation, whereby they had acquired more than their agreed proportion of the stock and complainant could not obtain the proportion to which he was entitled. The corporation and all of such individuals were made defendants. *Held*, that the bill stated a cause of action for specific enforcement of the agreement, to which all the defendants were proper parties, and that the fact that if, as alleged, stock had been issued for property at an excessive valuation, it was in violation of the statutes of the state, was not a bar to the granting of such relief.

Appeal from the District Court of the United States for the Western District of Louisiana; George W. Jack, Judge.

Suit in equity by J. E. Ritchie against the W. G. Strange Oil & Refining Company, Inc., and others. Decree for defendants, and complainant appeals. Reversed.

The appellant, J. E. Ritchie, brought this suit in equity against the appellees, W. G. Strange Oil & Refining Company, a Louisiana corporation, W. G. Strange, and six other individuals. The bill contained averments to the following effect:

The appellant prior to April 1, 1919, being in control and having the disposition of mineral leases covering approximately 16.000 acres of land in Claiborne and Union parishes, Louisiana, entered into an agreement with W. G. Strange and the other individual appellees, providing for the appellant transferring or causing to be transferred to the association, composed of himself and the individual appellees, said mineral leases controlled by the appellant, for the individual appellees paying the cost of putting down a well on land embraced in those leases. and for each of the parties to that agreement having a one-eighth share or interest therein. Before any operations were begun under that arrangement, the parties thereto determined to form a corporation,

with a capital stock of $500,000; the plan being that such corporation would acquire other mineral leases on other lands in Louisiana, and it being agreed by the parties that appellant was to have an equitable allowance on the leases held or controlled by him; that thereafter each of the parties to the agreement, including the appellant, was to pay one-eighth of the cost of the acquisition of additional leases and of the development thereof; that on the payment by the appellant of $625 and the transfer to the proposed corporation of the leases controlled by him, $10,000 of the capital stock of such corporation was to be issued to him, and that each of the eight parties to the agreement should own a one-eighth interest in said corporation, each of them to contribute one-eighth of such sums as might be deemed necessary to pay into the corporation, and each of them to have one-eighth of the capital stock thereof.

Pursuant to that agreement a meeting at Shreveport of the parties to it was called on or about April 1, 1919, for the purpose of organizing a corporation pursuant to the agreement. At that meeting articles of incorporation were drafted for a corporation with a capital stock of $500,000, which was subscribed by the parties to the agreement; the appellant subscribing for one-eighth of the capital stock. After those articles of incorporation were signed by the appellant, they were left by him with J. G. Palmer, one of the appellees. Thereafter, until October 5, 1920, appellant believed that the articles so signed by him were the articles of incorporation under which the appellee W. G. Strange Oil & Refining Company proceeded to transact business. On or about April 10, 1919, at a meeting of which the appellant had no notice, the individual appellees signed articles for the incorporation of the W. G. Strange Oil & Refining Company, with a capital stock of $1,000,000, each of the individual appellees subscribing for 743 shares of the stock; one of them, without appellant's authority, subscribing in appellant's name for 100 shares of such stock. The individual appellees withheld from appellant all knowledge of the organization of said $1,000,000 corporation and of the act of one of them in subscribing for appellant only 100 shares therein, and appellant did not learn of those transactions until on or about October 5, 1920. The individual appellees caused themselves to be elected sole directors of that corporation, which is a closed one; the appellee W. G. Strange being made president thereof.

On or about April 3, 1919, appellant was advised by one of the individual appellees that the corporation likely would be in need of funds at an early date, and that the amount necessary to be paid in by the appellant would be about $4,000, which sum appellant, upon his return to his home at Texarkana, arranged to secure, and he was ready and willing at that time, or whenever called upon, to procure said sum for said enterprise; that sum being, as he understood, his portion of the funds necessary at that time for the further operations of the corporation. On July 8, 1919, appellee W. G. Strange, president of the appellee corporation, being duly authorized thereby, came to appellant's home for the purpose of making a demand upon him for his pro rata part of the funds to be paid into the corporation to entitle him to a one-eighth interest in said corporation, and to put him on a parity as to advances with the other shareholders. On that occasion Strange stated to appellant that the latter's share of the funds to be paid into the corporation was the sum of $7,700, and that upon appellant's payment of that sum the corporation would issue to him $80,000 of its stock. At that time Strange offered appellant $5000 in cash for the $10,000 of stock in the corporation then held by the appellant. Appellant stated to Strange that he would either accept that offer or send the $7,700 to him the next day. The next day appellant sent to Strange bank exchange for $7,700. Strange retained the exchange until July 15, 1919, when he wrote a letter returning the exchange and declining to issue the additional $80,000 of stock, without explaining his refusal to accept the exchange and to issue the additional stock.

The mineral leases controlled by the appellant were assigned to the corporation. The appellee corporation from time to time with its corporate funds acquired and purchased various leases, other than those controlled and assigned by the appellant, including leases acquired by the individual appel-

lees for nominal sums, which were transferred to the corporation at excessive valuations, in order to inflate their holdings in said corporation and to depreciate appellant's holdings therein. The individual appellees have not paid for their respective interests in the corporation any more than the amount which appellant has paid or proposed to pay for a like interest therein. After its organization said corporation from time to time acquired with its corporate funds various leases and said corporation, confederating, colluding, and conspiring with the individual appellees for the purpose of excluding appellant from his just share of the stock of the corporation, caused to be issued to the individual appellees stock of the corporation for such leases, excluding appellant from the benefit of leases so acquired. Appellant has at all times insisted that he is entitled to one-eighth of the capital·stock of the corporation upon the payment by him of a sum equal to that paid by the individual appellees. Before bringing this suit he offered to pay such sum, but his offer was refused. He is still ready, able, and willing to pay such sum as may be due for his share of said stock under the agreement alleged. The bill contained prayers for special relief and a prayer for general relief.

The appellees moved the dismissal of the bill, on the grounds that its averments are insufficient to disclose a valid cause of action in equity against the appellees or any of them, that the appellant's demands are wholly devoid of equity, and that there is a misjoinder of parties and causes of action. The bill was dismissed without prejudice to such rights as the plaintiff therein may have against Strange and the other incorporators individually. The appeal is from the decree to that effect.

J. D. Wilkinson, of Shreveport, La., and James D. Head, of Texarkana, Ark. (Wilkinson, Lewis & Wilkinson, of Shreveport, La., on the brief), for appellant.

Robert A. Hunter, of Shreveport, La., for appellees.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge (after stating the facts as above). The averments of the bill show that the appellant complied with his part of the agreement in pursuance of which the corporation was formed, so far as he has been permitted to do so, and that he has been and is ready and willing to comply with the agreement on his part, so far as it is unperformed. Under that agreement the parties to it were to receive stock in the corporation to be formed by them in proportion to the value of the assets contributed to the corporation by them respectively; it being provided that each of the parties was to contribute one-eighth in value of the assets and was to get one-eighth of the stock issued therefor. The averments show that, as a result of excessive overvaluations of assets contributed by the individual appellees and of other means resorted to by them and the corporation controlled by them, they received greatly more of the stock of the corporation than they were entitled to under the agreement, and the appellee received greatly less than his proportional share of the stock issued. It is disclosed that in the issue and distribution of the stock of the corporation the provisions of the agreement were violated to the detriment of the appellant and to the inequitable advantage of the individual appellees.

Every one who became a stockholder, director, or officer of the corporation which was formed was a party to the contract in pursuance of which appellant's leases and money were acquired by that corporation. The agreement has the effect of making the individual appellees hold the stock issued to them in trust for the appellant to the extent

that those appellees got more stock than they were entitled to under the agreement. The trust so arising in favor of the appellant is enforceable in a court of equity. Rogers v. Penobscot Mining Co., 154 Fed. 606, 611, 83 C. C. A. 380. Equity looks upon that as done which ought to be done. It seems that that agreement is enforceable, not only against parties to it, but, so far as the issue and distribution of the stock is concerned, against the corporation which has acquired the assets contributed by the appellant in pursuance of the agreement; it not being disclosed that anything has occurred to make it inequitable for that agreement to be binding on such corporation in respect to the distribution of its stock among the parties to the agreement. Bispham's Principles of Equity (7th Ed.) § 365. So far as appears, no beneficial interest of the corporation would be affected by a redistribution of its issued stock pursuant to a valid contract between the parties to whom that stock was issued. Furthermore, the corporation, though it was in no way bound by an agreement to which it was not a party, was a proper party defendant, as the enforcement of the appellant's rights under the agreement will involve action by the corporation in canceling stock certificates issued and in issuing other certificates in making a redistribution of stock in conformity with the requirements of the agreement and the respective rights and obligations of the parties thereto. Construction Co. v. Cane Creek, 155 U. S. 283, 15 Sup. Ct. 91, 39 L. Ed. 152.

The fact that the law of Louisiana was violated by the issue to the individual appellees of stock having a face value greatly in excess of the value of the property received by the corporation in payment for that stock is not an obstacle to the enforcement of the appellant's rights under the agreement alleged. Nothing in that agreement indicates that any violation of law was contemplated or would be involved in properly complying with its terms. A violation by the appellees of the law on the subject of the correspondence between the face value of stock issued and the value of the property or labor received by the corporation in payment therefor is not involved in the enforcement of appellant's contract right to or interest in that stock after it has been issued. The appellant's right to have the issued stock distributed between the parties to the agreement and in accordance with its terms is not dependent on the conduct of the appellees in the matter of the issue of the stock having been in conformity with the law.

For reasons above indicated, we are of opinion that the averments of the bill disclose a state of facts which, under the prayers to require specific performance and for general relief, entitles the appellant, upon his complying with such of his obligations under the alleged agreement as, without his fault, remain unperformed, to the enforcement of his right to the part of the issued stock of the corporation to which, by the terms of the agreement, performance of his obligations thereunder entitled him. It follows that the court erred in dismissing the bill.

The decree to that effect is reversed.