Jones v. Robbins.

CHARLES JONES, *in eq. versus* AUGUSTUS C. ROBBINS *& al.*

In a bond conditioned to convey land upon the payment of a note, time is not considered, *in equity*, to be of the essence of the contract, unless the parties have expressly agreed that it shall be so regarded, or unless it follows from the nature and purposes of the contract.

Generally, in such contracts, the time of payment is regarded, in equity, as formal and as meaning only that the purchase shall be completed within a reasonable time, and substantially, according to the contract, regard being had to all the circumstances.

Time is not made of the essence of such a bond, by inserting in it a clause that, " in case the obligee shall neglect or refuse to pay the note according to its tenor, the bond shall be void.

In such a case, a delay to pay the note was excused by proof that the obligee was intending to pay it, but that, before and at, and a few weeks after the pay-day, he was prevented by sickness from attending to any business affairs, and that upon his recovery, he sought permission of the obligor to pay it.

In such a case, it having appeared that the obligor had determined to insist upon the forfeiture, as soon as the pay-day of the note had expired, and that therefore, no subsequent tender would have been accepted, it was decreed that he should convey the land, a tender having been made prior to the suit.

THIS was a bill in equity, praying that the defendants might be decreed to convey certain specified real estate, according to their bond to the plaintiff.

The opinion of the Court, (HOWARD, J. dissenting,) was delivered by

SHEPLEY, C. J.— By this bill the specific performance of a written contract, for the conveyance of real estate is sought. The defendants by their bond made on October 28, 1845, engaged to convey to the plaintiff, certain premises therein described upon condition, that he should pay to them two promissory notes made by him on that day, and payable to the defendants with interest annually, one payable in one year and the other in two years from that time. The notes were for one hundred dollars each, and one hundred dollars had already been paid as part of the purchase money. The condition of the bond contained the following clause. " In case said Jones

shall neglect or refuse to pay the above described notes according to their tenor or any part thereof, then this bond shall be void, otherwise to remain in full force and effect."

The plaintiff did not pay the first note, when it became payable, and did not make any tender or offer of payment until December 17, 1846, when he tendered an amount sufficient to pay that note, but not sufficient to pay it together with the interest, which had accrued on the second note during the first year. When the second note became payable, an amount sufficient to pay both notes was tendered.

The plaintiff presents proof of certain circumstances in excuse for the delay of payment; and the question presented for decision is, whether according to the established principles of equity jurisprudence they can be regarded as sufficient.

It becomes necessary in the first place, to disencumber the case of certain other matters, introduced by each party.

The plaintiff alleges, that he placed confidence in the defendant Robbins, that being a lawyer he would make the bond correctly, that it did not exhibit the contract fairly, and that he received it without reading it.

These allegations are denied, and they are wholly unsupported. There does not appear to have been any just cause for their insertion.

He further alleges, that having taken possession of the premises, he expended about five hundred dollars in making improvements upon them. The parties have taken testimony to prove and to disprove the amount alleged to have been expended, all of which is of no further importance than to exhibit the expenditure of some money as an indication, that the plaintiff intended to complete the purchase.

The defendants in their answers allege, that the plaintiff committed trespasses upon their adjoining lands. If he had, the law would afford them protection, and compensation, and his right to have a conveyance will not thereby be affected.

They further allege, that he unexpectedly changed his business and occupied the premises for purposes, for which they had not before been occupied. The premises do not appear to have

been sold subject to any restriction respecting their use, and the rights of the parties will not be changed by their application to a different use.

Courts of equity have frequently decreed the specific performance of contracts for the conveyance of estates, when there had been a failure to comply with the terms of the contract, in point of time. That is not considered to be of the essence of the contract, unless the parties have expressly agreed, that it should be so regarded, or unless it follows from the nature of and purposes of the contract. A reasonable regard is to be had to the convenience of man, and to the accidents and infirmities incident to all the transactions of business. The effect of neglect to make punctual payment upon a contract for the purchase of lands was considered by this Court in the case of *Rogers* v. *Saunders*, 16 Maine, 92, and it has found no occasion to change the opinions then expressed. In the ordinary cases of sales of estates, the general object being to make a sale for an agreed sum, the time of payment is regarded in equity as formal and as meaning only, that the purchase shall be completed within a reasonable time, and substantially according to the contract, regard being had to all the circumstances.

The party seeking relief from a forfeiture must show, that circumstances, which exclude the idea of willful neglect or of gross carelessness, have prevented a strict compliance, or that it has been occasioned by the fault of the other party, or that a strict compliance has been waived. *Hepwill* v. *Knight*, 1 Younge & Collier, 415; *Brashier* v. *Gratz*, 6 Wheat. 533; *Wells* v. *Smith*, 2 Edw. 78; *Dumond* v. *Sharts*, 2 Paige, 182.

The excuse presented by the plaintiff, for his neglect to pay at maturity the note, which first became due, is, that he was at that time unable to attend to business on account of illness.

The testimony shows, that he was quite unwell, occasioned by a severe attack of influenza, from October 23, to the very last of the month of November, 1846. He was found walk-

ing out on a pleasant day, October 29, by a physician, who observed to him, that he looked very sick. He replied that he was, and requested the physician to visit him that day. The physician states, that he did so, and after examination concluded that he had been sick some time, that his symptoms were alarming, that he considered his case a critical one, and that he attended upon him through the month of November. The testimony of the physician was introduced by the defendants. The testimony would seem to be sufficient to show, that he ought not to be subjected to a forfeiture of a right for not attending to the transaction of business of no more importance to others than the payment of a small sum of money, a month or two earlier or later.

The bill states, that he had made an arrangement with Samuel Thompson before the middle of October, to obtain the money to pay the note becoming due on the 28th of that month. This is proved by the testimony of Thompson.

It further states, that about the first of December, and on the first occasion of his being able to ride out, the plaintiff met Robbins and stated to him, that he wished to take up the note which had become due during his illness, and would also take up the note becoming payable the following year, and that Robbins replied, that he would see Mr. Parshley and let him know about it. The answer of Robbins admits, that he met the plaintiff walking in the street about that time, but it denies, that the conversation is correctly stated in the bill; and asserts that the plaintiff said to him, my first note is out, if you will wait about three weeks, I will pay you that, and also the other, which becomes due next year, and that he made no answer to that proposal. The conversation as stated by the plaintiff is not proved, and that stated in the answer must be regarded as correct. From this silence, so noticeable, and from the conduct and observations made by the defendants, when the tenders were subsequently made, a fair inference arises, that the defendants did not intend to waive the strict performance for a day on account of the plaintiff's illness, but intended to insist upon a forfeiture. If this be so,

they cannot have been injured by the delay to tender until the 17th of December, for if that tender had been made on the first day of that month, it would not have been accepted. The omission to tender the interest, which had accrued during the first year upon the note last payable, rests upon the same position.

There is no reason to believe, that the defendants would have varied their course in any degree, if it had been tendered. If the defendants had intended to overlook the omission to perform during his illness, and to insist upon an immediate performance on his recovery, and to set up an omission to do that as a cause of forfeiture, fair dealing would seem to require that an answer should have been given to his proposal, and that he should have been informed, that any further delay would be considered as a forfeiture of his rights. The conclusion seems unavoidable that the defendants have not refused to perform on account of the delay, which occurred after the plaintiff's health was so far restored, that he could attend to business, or on account of the insufficiency of the amount tendered. The hostile feelings, which had existed between the parties before the first note became payable, and the conduct and remarks made by the defendants show, that they intended to avail themselves of the first omission to perform. The forfeiture was occasioned only by that omission, not by any subsequent delay. Upon the principles already stated, that omission having been occasioned or accounted for by occurrences not within the power of the plaintiff to avert, and for the happening of which he was not in fault, should not be allowed to prevent a decree for specific performance. The plaintiff had failed to perform in time. No exertion to make immediate payment after his recovery, could restore him to his former position, without the consent of the defendants or the interposition of the Court. He appears to have sought their favor and to have been met by silence. Subsequent delay could only be evidence of laches or abandonment, which would prevent a court of equity from preserving his rights from forfeiture by the first omission. That he

had no intention to forfeit those rights by laches or by abandonment may be inferred from the facts, that he had paid one third part of the purchase money, that he had expended money to improve the estate, that he had before his illness made an arrangement to obtain the money to pay, that on his recovery he endeavored to obtain time to perform and offered to make compensation for the delay in payment of the first note by paying the second before it was payable. The defendants have suffered no loss, which the law does not presume to be compensated by the interest, which accrued. The estate was not of a character to be subject to unusual rise or fall in value.

A decree for specific performance, is to be entered, with costs.

*Willis* and *Fessenden,* for complainant.

*Barnes* and *McCobb,* for respondents.