## M. J. McIver, et al. *vs.* Napoleon Bell, et al.

## Aroostook.    Opinion December 12, 1918.

*Lease and agreement.    Mortgage.    Evidence.    Exceptions.    Waiver.    Equitable*
*defenses and pleading.*

An Aroostook County farmer, of the name of Napoleon Bell, went from his home to the store of the plaintiffs, and negotiated with them for a supply of fertilizer. Their trading merged in a written agreement under seal, variously styled in the case a "contract" or "lease", which concerned the defendants' farm and its contemplated crop, and constituted a security for the payment of the purchase price of the fertilizer; a payment the one was obligated to make, and the others were bound to receive, in potatoes at an agreed price of one dollar a barrel.

About three months later, after Bell had received the commercial manure, he and his wife gave to the plaintiffs a mortgage of the aforesaid farm, the recited consideration corresponding in amount with that of the charge for the fertilizer, namely $234.00.    The mortgage is defeasible, to quote its terms, if the mortgagor, "shall truly perform the conditions of the potato contract and lease . . . and in default thereof the sum of Two Hundred and Thirty-four Dollars shall immediately become due and payable.    This mortgage is given as collateral security for the performance of said contract and does not deprive the grantees of any right of action for breach of its conditions.    If the property herein described is sold before fall the mortgage will be discharged on payment of $234.00."

Well within the appointed time, Bell delivered to the plaintiffs one hundred and thirteen barrels of the specified kind of potatoes, actually worth somewhat more than $22.00 in excess of the amount of the charge for the fertilizer.    He declined to deliver more to apply on the fertilizer account.    Thereupon the plaintiffs brought this action of covenant broken, counting on breach of the original agreement.

*Held:*

1.    That the two documents, although executed at different times, were parts of the same transaction and that in respect to damages they should be taken and construed together.

2.    The rights and liabilities of the parties at first were fixed by the lease or contract.    It was perfectly competent for them in succeeding time to waive or annul that contract, or to add to or to subtract from it, or to give and take security for its fulfillment or to vary and modify its terms.    The two documents should be read together and each construed with reference to the other, to the end that the intent of the parties, what they particularly meant, as they defined and recorded that meaning, shall control.

Action for covenant broken. Defendant filed plea of general issue; also brief statement setting forth in substance an equitable plea of defense. Verdict for plaintiff in the sum of $443.47. Defendant filed motion for new trial; also exceptions to certain rulings of presiding Justice. Exceptions sustained.

Case stated in opinion.

*George J. Keegan, and Powers & Guild*, for plaintiff.

*L. V. Thibodeau, and R. W. Shaw*, for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, DUNN, MORRILL, JJ.

DUNN, J. An Aroostook County farmer, of the name of Napoleon Bell, went from his home in Hamlin Plantation to the store of the plaintiffs in the town of Van Buren, and negotiated with them for a supply of fertilizer. Their trading merged in a written agreement under seal, dated February 10, 1916, variously styled a contract or lease. By the terms of that agreement, for a consideration recited as two hundred and thirty-four dollars and additionally good and sufficient, Bell and his wife purported to "lease and convey" to the plaintiffs, "my farm," for the term of ten months from the day of the date of the writing. They further agreed to carry on, plant, and sow the farm, at their own expense, to the approval of the plaintiffs; and, in a husbandlike manner, to cultivate, harvest, and store the crop under the supervision, control, and direction of the latter. Moreover the defendants covenanted to deliver to the plaintiffs, in Van Buren, between September 20th and October 30th 1916, from the contemplated crop if sufficient, but absolutely in any event, two hundred and thirty-four barrels of Aroostook Prize potatoes at one dollar a barrel, or to pay the current value thereof. The plaintiffs agreed to pay Bell the stipulated price for potatoes of that quantity and variety, and to "release and convey" to him and his wife, all the remainder of the crop. Soon following upon the execution and delivery of the contract, and as the only consideration therefor, Bell received fertilizer of the plaintiffs for which they charged him two hundred and thirty-four dollars. Stopping here, the "lease" constituted a security for the payment of the purchase price of the fertilizer, which payment the one was obligated to make, and the others were bound to receive, in potatoes at an agreed price.

But the negotiations did not stop there. Later on, to be precise as to time, on the fourth day of May in the same year, after Bell had received the commercial manure, he and his wife gave to the plaintiffs a mortgage of the aforesaid farm. The mortgage, in which the consideration is stated as two hundred and thirty-four dollars, is defeasible, to quote its terms, if the mortgagor,---

"shall truly perform the conditions of the potato contract and lease signed by said Napoleon Bell and Evelyn Bell in favor of said M. J. McIver and W. E. Watson, doing business under the title and firm name of McIver & Watson at Van Buren, Maine, and in default thereof, the sum of Two Hundred and Thirty-four Dollars shall immediately become due and payable. This mortgage is given as collateral security for the performance of said contract and does not deprive the grantees of any right of action for breach of its conditions. If the property herein described is sold before fall the mortgage will be discharged on payment of $234.00."

From the time of making the lease, Bell continued in possession of the farm, and there raised a crop from which, well within the appointed time, he delivered to the plaintiffs, for credit on his indebtment to them, one hundred and thirteen barrels of the specified kind of potatoes, actually worth two hundred fifty-six dollars and eighty cents, or somewhat more than twenty-two dollars in excess of the amount of the charge for fertilizer. Afterward, through the autumn and winter, Mr. Bell himself, or his son for him, sold the plaintiffs, on the market, from his crop, about two hundred other barrels of potatoes, for which, when and as purchased, they paid him at prevailing prices. But he never delivered more than the one hundred and thirteen barrels to apply on the fertilizer account, and when, about the last of October, he was requested, as the plaintiffs say, to completely perform his contract, "he sent word by the boy that his contract was filled."

In April of the next year, plaintiffs brought covenant broken against Bell and his wife, counting on breach of the original agreement, for that the defendants neither delivered the potatoes nor paid the value thereof. The defendants, by brief statement under the general issue,

invoked as an equitable defense (R. S., Chap. 87, Sec. 18,) that plaintiffs declared on what, in effect, was a chattel mortgage given to secure payment of the price of the fertilizer, and that, when the suit was commenced, both the chattel and the later real estate mortgage were then already fully paid and satisfied. Verdict was for the plaintiffs in the sum of $443.47. The case is here on motion and exceptions by the defendants.

Among the questions that arose at the trial was whether the lease and the real estate mortgage, both of which were in evidence, should be considered in concert. The defendants requested an instruction, in substance, that the two documents, although executed at different times, were parts of the same transaction, and that, in respect to damages, they should be taken and construed together. We are of opinion that the instruction should have been given. The rights and liabilities of the parties at first were fixed by the lease or contract. It was perfectly competent for them in succeeding time to waive or annul that contract, or to add to or to subtract from it, or to give and take security for its performance, or to vary or modify its terms. In the terse expression of Judge PETERS, parties may contract about a contract as well as concerning anything else. *Storer* v. *Taber*, 83 Maine, 387. The lease and the mortgage relate to the same subject-matter. The one refers in terms to the other, and they together embody the transaction. The two should be read together, and each construed with reference to the other, to the end that the intent of the parties, what they particularly meant, as they defined and recorded that meaning, shall control.

The mortgage was in the usual form, reciting a consideration of $234.00, and no other. The defeasance clause provides that on default of payment "the sum of $234.00 shall immediately become due and payable." The word "immediately" is unusual and as here used becomes significant in its bearing upon the intent and purpose of this mortgage. An unusual word, like a technical word, sometimes furnishes a key for the solution of a matter under consideration. While the word "immediately" added nothing to the plaintiff's legal right of foreclosure it is yet suggestive of what he wished to accomplish by means of the mortgage. The direct force of this word was to liquidate the amount due and enable the plaintiff to bring an action at once on default and not await foreclosure.

It also will be seen that this mortgage presents two unusual features. It made the amount "immediately due and payable" and was not accompanied by any promissory note as evidence of the consideration named. But making the amount "immediately" due on default obviated the necessity of such evidence. The amount was agreed upon in definite, written terms. This was liquidation. Webster's New International Dictionary defines "to liquidate" as follows: "To determine by agreement the precise amount of indebtedness." Words and Phrases, Vol. 5, page 4173. "To reduce to precision in amount." Idem 5174, "A claim is liquidated when the amount due is fixed by law or has been ascertained and agreed upon by the parties." This is what the language of the mortgage shows was done in this case. The amount was made certain and payable at once upon the contingency named, as would a promissory note be definite in amount and payable at once upon the expiration of its due date.

But an agreement to liquidate is binding upon both parties. One party cannot claim liquidation if it is to his advantage and disclaim if to his disadvantage.

Following the defeasance clause of the mortgage, is found the proviso upon which the plaintiffs found this action, viz: "That the mortgage does not deprive the grantors of any right of action for breach of its condition," that is, the condition of the lease. The consideration of the lease is named as $234.00. The exact amount due the plaintiff for phosphate. This amount was, however, payable in potatoes at $1.00 per barrel. But the exact amount the plaintiffs would receive, or the exact amount the defendant would be required to pay in this way, was uncertain. If the potatoes were worth more than $1.00 per barrel the plaintiff would gain by holding to the terms of the lease; if less than $1.00 per barrel, they would lose and the defendant would gain. It, therefore, was not unreasonable that they should get together and agree upon the exact amount that should be due, and secure its payment by a mortgage of real estate, regardless of the lease or the price of potatoes named in it. The plaintiffs had to refer to the lease in the mortgage for the lease was the only consideration for the mortgage.

The mortgage itself is evidence that the parties did get together.

Accordingly, we think a reasonable construction of this clause is that the plaintiffs should not be confined to a foreclosure of the mort-

gage, but should still retain their right of action under the lease for the sum agreed upon, liquidated at $234.00. This construction does justice to each of the parties, carries into effect both the lease and the mortgage and meets the presumption of law that the mortgage was intended by the parties to have some effect and be something more than a mere nullity. For it would be unreasonable that the plaintiffs should have a right of action under the mortgage for one sum and under the lease for an entirely different sum at their election.

Hence the requested instruction: "That the contract between the parties at the time the suit was brought is shown by the original lease and the mortgage of May 4, and when considering the amount of damages both writings should be taken into consideration" should have been given, and the exceptions to a refusal to so instruct the jury is sustained.

It is unnecessary to consider the other exception or the motion, as this particular exception is vital to the determination of the case.

*Exceptions sustained.*