**Bruce B. SPRAGUE and First Peninsula Company**

**v.**

**William R. DUGAN and Mary T. Dugan.**

Supreme Judicial Court of Maine.

Aug. 4, 1970.

Herbert T. Silsby, Ellsworth, William B. Talbot, Machias, for plaintiffs.

Wesley E. Vose, Machias, Francis E. Day, Bangor, for defendants.

Before WILLIAMSON, C. J., and WEBBER, MARDEN and POMEROY, JJ.

WILLIAMSON, Chief Justice.

This is an action by the plaintiff Sprague (Buyer) and First Peninsula Company (Peninsula), assignee of the Buyer, and the defendants (Sellers), in which the Buyer seeks specific performance of a written contract for the sale and purchase of land in Machiasport. The Court denied specific performance.

The Buyer appeals from final judgment on the ground of error in the Court's refusal to grant a new trial. The Sellers on cross appeal rely on error of the Court "in refusing to strike [the Buyer] as a Party Plaintiff and in determining him to be a Party In Interest." Peninsula was made a party plaintiff on the Buyer's motion after entry of the action, and did not appeal.

In his motion for new trial the Buyer asserts error of the Court: (1) in excluding certain evidence of the purchase price of the real estate paid by the Sellers; (2) that the evidence was insufficient to warrant a decree for the Sellers, and (3) that the decree was against the weight of the evidence.

Point (1) was not argued, and is waived. Point (3) is not applicable in a case heard by the Court without a jury. Under Point (2) the findings of fact of the single justice are to be tested under the "clearly erroneous" doctrine. Rule 52(a) M.R.Civ.P.; Gosselin v. Better Homes, Inc., Me., 256 A.2d 629, 636 (conclusive when supported by credible evidence); 1 F.McK. & W.Me.Civ.Pr.2d §§ 52.7, 52.8, for discussion and reference to Maine cases.

The Court found in substance:

The Sellers were the owners of approximately 620 acres of land in Machiasport. The Buyer negotiated with them for the purchase of the property. The Sellers wished to have the necessary instruments drawn by their attorney Mr. Vose of Machias, but were persuaded by the Buyer to have them drawn by his attorney Mr. Blaisdell of Ellsworth.

The contract drawn by Mr. Blaisdell, who was attorney for both the Buyer and Peninsula, provided among other things that it was assignable, and that the purchase price which the Buyer agreed to pay was $50,000, payable $5,000 upon execution and delivery of the agreement, $7,000 on or before delivery of the deed, and $38,000 by note of the Buyer secured by a purchase money mortgage. For purposes of the action

August 20, 1967 was considered as the date for closing the transaction under the contract. The Buyer assigned "all my rights under and interest in said contract" to Peninsula by an assignment in fact executed before the contract of purchase and sale was executed by the Buyer and Sellers. The further agreement in a separate instrument was made at the same time by Peninsula with the Buyer "that if said property is conveyed to [Peninsula] by [the Sellers] in accordance with said contract then you shall have the right to purchase from [Peninsula] all of said property so conveyed except a strip of land Seven hundred (700) feet in width on the western side of said property" for a purchase price of $18,000.

The contract between the Buyer and the Sellers prepared by Mr. Blaisdell was mailed to the Sellers in Florida and returned executed by them. It was then signed by the Buyer, dated July 6, 1967, and the $5,000 check mailed to the Sellers. Unknown to the Sellers the $5,000 payment in fact was supplied by Peninsula.

By letter of August 16, 1967, Mr. Blaisdell advised the Sellers of the date and place of closing. On August 25 Mr. Blaisdell mailed to the Sellers drafts of a deed of the property to Peninsula and of a mortgage from Peninsula to the Sellers, and advised them of the assignment to Peninsula. This was the first information the Sellers had that the Buyer had assigned the contract.

The Sellers were unwilling to accept a mortgage and note for $38,000 from Peninsula and insisted upon maintaining the personal liability of the Buyer Sprague. Mr. Blaisdell on his part insisted that they were under an obligation by their agreement to convey to Peninsula and accept a purchase money mortgage and note without the Buyer Sprague's personal liability. The Sellers thereupon secured the services of Mr. Vose as their attorney. Later, by letter of September 11, 1967, Mr. Blaisdell advised the Sellers that the Buyer would go forward with the purchase and give the

mortgage and note. No action was taken by the Sellers on this information.

At about this time the Buyer advised the Sellers that he had not assigned the contract to Peninsula. This, however, was not the fact.

The Sellers refused to sell the property and subsequently the parties made mutually satisfactory arrangements concerning the $5,000 down payment. The Court found no loss to the Sellers from delay in completing the transaction. In short, the transaction could have been completed in September as well as in August 1967 without loss.

The Court found: (1) that the Sellers were justified in considering the contract at an end about the time Mr. Blaisdell informed them that the Buyer would complete the transaction; and (2) further, that the Buyer was properly denied specific performance on the ground that he came into Court without "clean hands".

The Court, in his decree, said:

"I [the Court] refer to [the Buyer's] duplicity in affirmatively assuring plaintiffs that he was to use the property as a cattle ranch, and that his brother would help him finance it and to his efforts to keep the defendants from going to their Washington County attorney for the preparation of the documents and also to his attempt to persuade them to convey to him in September by denying that he had assigned to Peninsula."

The Court properly denied specific performance to the Buyer and entered judgment for the Sellers. We reach the same result by a different path.

In our opinion when the Buyer assigned the contract to Peninsula, as he had the right to do, then the Buyer had no further interest in the transaction which the Sellers were in any way bound to recognize.

Drafts of a deed from the Sellers to Peninsula and of a purchase money mortgage from Peninsula to the Sellers were prepared by Peninsula and presented by its attorney to the Sellers. Peninsula, however, did not comply with the contract in that the purchase money mortgage did not and was not intended to carry the personal liability of the Buyer. The Sellers, it is to be noted, became obligated under the terms of the contract to sell to Peninsula upon notice and of course proper proof of the assignment, which was determined to be valid by the Court.

After the refusal of the Sellers to accept the mortgage from Peninsula, no mortgage from the Buyer was ever offered to them, except in connection with the Buyer's demand in September 1967 that the Sellers convey the property to him.

As we have seen, judgment was for the Sellers against the Buyer and Peninsula. The latter accepted the result and has not appealed.

The Court, in our view, erred in not granting the Sellers' motion to strike the Buyer as a party plaintiff when it became evident that the contract had been assigned by the Buyer to Peninsula.

Whatever interest the Buyer had thereafter in the Sellers' land was derived from his agreement with Peninsula, in which the Sellers had no part. Under this agreement (the validity of which we are not required to decide), the plaintiff Sprague not as a Buyer from the Sellers, acquired certain rights "if said property is conveyed to [Peninsula]."

The Buyer ceased to be a party in interest upon the assignment to Peninsula. All of his rights were transferred to Peninsula. The assignment was total. When this situation became evident, the Sellers were entitled to have the Buyer removed from the case as a party. Rule 17(a) M.R.Civ.P.; Northland Industries, Inc. v. Kennebec Mills Corp., 161 Me. 455, 214 A.2d 100; Borough of Nanty-Glo to Use of Westinghouse Credit Corp. v. Fireman's Fund Insurance Co. (D.C.Pa.1966) 250 F.Supp. 329;

United States for Use and Benefit of Allen Construction Corp. v. Verrier (D.C.Me. 1959) 179 F.Supp. 336 (assignor for security a proper party plaintiff).

"Where an assignment is total or where a subrogee has paid the full amount of the loss, the assignee or subrogee is the only real party in interest. He is therefore the sole proper party plaintiff, except for the provision made in the third sentence of Rule 17(a), discussed in Section 17.4 below [Insurers]." 1 F.McK. & W.Me.Civ.Pr.2d § 17.2.

"When the assignor retains no interest in a chose in action he is not a real party in interest and may not sue thereon." 2 Barron & Holtzoff § 482, p. 15.

"Thus if the plaintiff has assigned away all his right, title and interest in a contract, he may not maintain an action for its breach." 3A Moore's Federal Practice ¶ 17.09, p. 272.

With the judgment below in favor of the Sellers, there is no necessity of casting our entry in terms of their appeal. It is sufficient that the appeal of plaintiff Sprague be denied. In this view we do not reach the issues of termination of the contract or "clean hands". The plaintiff Sprague was not properly in Court having assigned his contract to Peninsula, and Peninsula did not appeal.

The entry will be

Appeal denied.

WEATHERBEE, J., did not sit.

DUFRESNE, Justice (concurring in result).

In my view the assignor-buyer, Bruce B. Sprague, lost his standing to appeal from the decision below when his assignee, First Peninsula Company, did not appeal and the judgment against it became final. The buyer's reconveyance rights in the subject matter of the defendants' contract were expressly conditioned in the agreement between the assignor-buyer and his assignee upon the property being conveyed "to The First Peninsula Co. by William Dugan and Mary Dugan in accordance with said contract." The rights of a subsequent assignee cannot rise higher than those of his assignor. Thus, I do concur in denying the appeal.

However, I cannot subscribe to the basis upon which the majority of the Court rest their decision and believe that I should explain my reasons for not joining in their rationale. May I say initially that I recognize the reconveyance contract from Peninsula to Sprague was in the form of an option, that is, an offer to be accepted by Sprague by the payment of five thousand ($5,000.00) dollars on or before October 1, 1967. The instant action was commenced by Sprague on the first of December following, and since Sprague's attorney, representing both Sprague and Peninsula, on August 9, 1968 moved for leave to amend the complaint to add Peninsula as a party plaintiff and in the amendment asserted rights under both the assignment and Peninsula's contract to reconvey, it must be implied that Sprague had accepted the terms of the reconveyance contract. Peninsula was acting in full concert with Sprague and would be estopped to claim otherwise.

Sprague's assignment to Peninsula, although total and complete in form, was not entirely such, because the assignment, in accordance with the intentions of the parties, was subject to an option in Sprague, later fully exercised, to have Peninsula reconvey to him a substantial portion of the premises involved. The assignment and the reconveyance contract were made at the same time, and although evidenced by different instruments were intended by the parties to embody together one single transaction. The reconveyance contract expressly refers to the assignment. Different instruments should be construed together as parts of the same contract where it is necessary to effectuate the agreement between the parties and to accomplish their

original intent. The Court below so found. See, Alden v. Camden Anchor-Rockland Machine Company, 1911, 107 Me. 508, 78 A. 977; McIver v. Bell, 1918, 117 Me. 495, 105 A. 105.

The contract between Sprague and Peninsula, upon Sprague's exercise of the option to repurchase part of the land was tantamount to a partial re-assignment of the defendants' contract to Sprague. The assignment of a part only of an entire chose in action is valid in equity, so as to be upheld in a court of equity, even against the consent of the obligor under the chose in action, where just and equitable results may be accomplished thereby and the interests of all parties determined in a single suit. The National Exchange Bank of Boston v. McLoon, 1882, 73 Me. 498, 40 Am. Rep. 388.

Under Rule 17(a), M.R.Civ.P. every action must be prosecuted in the name of the real party in interest. Rule 19(a) provides that "[a] person who is subject to service of process shall be joined as a party in the action if * * * (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest * * *." In the instant case, at the time of the ruling on the defendants' motion to strike the plaintiff-assignor as a party to the action, Sprague's interest in the subject matter of the contract through Peninsula's agreement to reconvey a part thereof would necessarily be affected by any decree to be rendered by the Court. If the decision favored Peninsula, Sprague's interest would remain; if on the other hand the Court below decided against Peninsula, as it later developed, the Court's disposition of the action in the absence of Sprague, if Sprague had been stricken as a party plaintiff, as a practical matter not only would have impaired or impeded his ability to protect his interest as the rule declares but would have completely prevented him from

taking any protective measures with respect to his rights at the trial level.

"[P]ersons whose interests will necessarily be affected by any decree that can be rendered are necessary and indispensable parties, and the court will not proceed to a decree without them, while parties whose interests will not be affected by the decree sought, although they may have an interest in the subject matter, are not ordinarily necessary parties, although they may sometimes be proper parties under the general rule in order to avoid a multiplicity of suits. Therefore the object rather than the subject of the suit must be looked to, and only those are necessary parties whose rights are involved in the purpose of the bill." Medico v. Employers Liability Assurance Corporation, Ltd., 1934, 132 Me. 422, 425, 172 A. 1, 2.

"The fundamental principle concerning parties is, that all persons in whose favor or against whom there might be a recovery, however partial, and also all persons who are so interested, although indirectly, in the subject matter and the relief granted that their rights or duties might be affected by the decree, although no substantial recovery can be obtained either for or against them, shall be made parties to the suit." Angell v. Gilman, 1949, 144 Me. 202, 206, 67 A.2d 15, 16.

All persons are to be made parties who are legally or beneficially interested in the subject matter and result of the suit. In the instant case, Sprague's assignment to Peninsula was not total and complete but, due to the Company's contract to reconvey a substantial part of the subject property to Sprague, it amounted to a partial assignment only and Sprague retained an enforceable substantive right against the defendants, at least so long as Peninsula's rights against the defendants had not been finally concluded. When an assignment is partial only, the assignee is still a real

party in interest but not the only one. The assignor still retains part of his substantive right. Hence both may be joined as parties plaintiff. See, Field, McKusick & Wroth, Maine Civil Practice, § 17.2 at page 350.

Peninsula's re-assignment to Sprague was no less an assignment of a valuable right enforceable in a court of justice because it was made on the condition, contingency or limitation, "if said property is conveyed to The First Peninsula Co. by William Dugan and Mary Dugan in accordance with said contract." Contingent rights have been recognized by this Court and a person whose such rights might be affected by a decree of court must be made a party to the action. Hichborn v. Bradbury, 1914, 111 Me. 519, 90 A. 325; Cook v. Bidwell, 1881, C.C.W.D.Pa., 8 F. 452; O'Connell v. City of Worcester, 1916, 225 Mass. 159, 114 N.E. 201; Maloney v. John Hancock Mutual Life Insurance Co., 1959, 2d Cir., 271 F.2d 609.

In Unity Telephone Company v. Design Service Company of New York, Inc., 1962, 158 Me. 125, 179 A.2d 804, our Court said that the agreement between Unity Telephone Company and American Surety Company had all the aspects of an assignment, although it did not contain words of an assignment, and held it error to have denied Design's motion that American be joined as a party plaintiff. Unity's rights against American were only contingent, in that American was obligated to pay to Unity only if Unity failed to recover from Design the sum of $4500, and then only to the extent of the deficiency. Sprague's interest in the controversy was real and substantial and the single Justice correctly denied the defendants' motion to strike him as a party plaintiff.

The purchase and sale agreement provides that the closing shall take place on or before the expiration of forty-five days from the date of the agreement, or at such other time and place as may be mutually agreed upon by the parties. In an action for specific performance to enforce a purchase and sale agreement of real estate, time is not considered of the essence of the contract, unless the parties have expressly agreed in the contract that it should be so regarded, or unless from the nature and purposes of the contract it may be deduced that such was the intent of the parties. Jones v. Robbins, 1849, 29 Me. 351.

In the instant case, time was not of the essence, and even if it were, the single Justice found as a fact that the Dugans waived the originally scheduled closing date. This finding of fact by a single Justice is binding on this Court under the "clearly erroneous" rule. Even though he found that the delay was not in itself detrimental to the defendants and that the time orginally set for closing had been waived, the single Justice, nevertheless, found the defendants were justified in finally refusing to comply with the contract.

The majority of this Court sanctions this result on the ground that Peninsula did not comply with the contract because the purchase money mortgage tendered by Peninsula to the Dugans did not and was not intended to carry the personal liability of the assignor-buyer. I agree that under the purchase and sale agreement with Sprague the defendants were entitled to Sprague's personal note or his endorsement of Peninsula's note, secured by the purchase money mortgage. Where a contract for the sale of land calls for the delivery of notes on the part of the vendee for deferred payments of the purchase price, the personal liability of the latter enters as a controlling element into the contract, and the offer or tender of notes of an assignee of the original vendee does not satisfy the terms of the contract, nor is such assignee warranted in asserting a right of specific performance based upon such a tender.

Everyone has a right to select and determine with whom he will contract and the obligee of a contract cannot be deprived of that security of performance anticipated by him from the character, ability, honesty

and financial stability of the named obligor by the mere assignment of the contract without the obligee's consent. The assignment to Peninsula, without the consent of the Dugans, could only operate as an assignment of the benefits of the contract, and not of the conjoined personal obligations of Sprague. Specific performance may not be granted to an assignee of such a purchase and sale agreement as involved in the instant case unless the assignee tenders to the seller in performance of the contract properly executed obligations carrying the personal liability of his assignor. See, Lojo Realty Co., Inc., v. Estate of Isaac G. Johnson, 1929, 227 App.Div. 292, 237 N.Y.S. 460, affd. 1930, 253 N.Y. 579, 173 N.E. 791.

The provision in the purchase and sale agreement that "[t]his agreement shall bind and inure to the benefit of the parties thereto, their heirs, executors, administrators, successors and assigns" is not sufficient in and of itself to rebut the general rule that in such contracts the personal financial responsibility of the vendee is a distinctive feature of and material inducement to the contract. See, Paige v. Faure, 1920, 229 N.Y. 114, 127 N.E. 898. Lee v. Ravanis, 1965, 349 Mass. 742, 212 N.E. 2d 480, upon which appellant relies most heavily, is distinguishable. In *Lee*, the purchase and sale agreement provided for performance by the buyer "or such nominee as the buyer shall have designated" and the Massachusetts Court by majority opinion construed the contract as fully assignable in benefits and obligations, in recognition of the approved practice in real estate transactions for principals in realty agreements to limit their liability by contract provisions referring to nominees in whose names title to the property is to be taken and who alone are to incur liabilities on the mortgage and mortgage note.

The parties were at loggerheads on two issues; they disagreed upon the defendants' entitlement to the assignor-buyer's personal obligations in performance of the contract and secondly, the defendants claimed that the buyer should prepare and tender the necessary documents in the transaction, a contention disputed by the attorney for the buyer and his assignee. Although resolved in favor of the defendants by the single Justice, it would appear that the positions taken by the attorney for the plaintiffs, although erroneous, were taken in good faith. When the defendants were notified that Sprague conceded that he would personally obligate himself in accordance with the terms of the contract, it was then the duty of the defendants, who were legitimately insisting that the plaintiffs prepare and tender the necessary documents to complete the transaction, to demand and require of the plaintiffs, and so notify them, that performance be made within a specified reasonable time therefrom. They could not without the setting of a specific date upon which they would expect the plaintiffs to comply with the terms of the contract as viewed by them cause a forfeiture of valuable rights. They had to articulate their demands respecting time for performance, since the previous time schedule was either waived or not of the essence of the contract. Faulting the plaintiffs on that score is in my view not justified in law. See, Lojo Realty Co., Inc., v. Estate of Isaac G. Johnson, 1932, 235 App.Div. 68, 256 N.Y.S. 105. The plaintiffs should have been informed that any further delay beyond the new specific date of settlement set by the sellers would be considered as a forfeiture of their rights. Jones v. Robbins, 1849, 29 Me. 351.

Resting my concurrence in results, as I do, upon Sprague's automatic loss of standing on appeal when the lower Court's judgment against Peninsula became final, I too leave unanswered whether the single Justice's denial of equitable relief was justifiable under the doctrine of "unclean hands" which the lower Court advanced as a supplemental basis for its decision.

I concur in denying Sprague's appeal.